UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| YOLANDA DENNIS | CIVIL ACTION NO. 15-2410 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| ERNEST COLLINS, II, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendant Greyhound Lines, Inc.'s ("Greyhound") Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 56 regarding Plaintiff Yolanda Dennis' ("Dennis") negligent supervision and training causes of action against Greyhound. See Record Document 37. Greyhound filed the instant Rule 56 motion on the ground that Dennis cannot simultaneously pursue both (1) a negligence claim against an employee (Collins) and (2) negligent supervision and training claims against the employer (Greyhound) when the employer has stipulated to the fact that the employee was acting in the course and scope of his employment. See id. For the reasons which follow, Greyhound's Motion is **GRANTED**, and Dennis' negligent supervision and training causes of action against Greyhound are **DISMISSED WITH PREJUDICE**.

**FACTUAL BACKGROUND**

Greyhound is a Delaware corporation with its principal place of business in Texas that is engaged in the business of transporting passengers by bus throughout the United States. See Record Document 1-2 at ¶¶ 1-9. Ernest Collins, II ("Collins") is a citizen of Texas who works as a bus driver for Greyhound. See Record Document 37-3 at 5-17. National Union Fire Insurance Co. of Pittsburgh, PA is Greyhound's insurer. See Record Document 1-2 at ¶ 4. On June 15, 2014, Collins was driving a Greyhound bus from Shreveport to Dallas, Texas. See Record Document 37-3 at 8. While traveling south on

Market Street just before entering the on-ramp to take Interstate 20 westbound, Collins collided with a vehicle in which Dennis was a passenger. See Record Document 1-2 at ¶ 5. Dennis suffered injuries as a result of the collision. See id. at ¶ 10-11.

Dennis filed the instant action in the First Judicial District Court of Caddo Parish, Louisiana, on June 15, 2015, alleging that (1) Collins' negligent driving and (2) Greyhound's negligent supervision, teaching, and training of Collins caused the collision and Dennis' injuries. See id. at 2, 6. After receiving a discovery response indicating that the amount in controversy was greater than $75,000, Defendants removed the case to this Court on September 23, 2015. See Record Document 1. Defendants filed the instant Motion for Partial Summary Judgment on July 1, 2016. See Record Document 37. Dennis filed a response opposing the Motion, and Defendants filed a reply. See Record Documents 40, 44.

## LAW AND ANALYSIS

### I. LEGAL STANDARDS

#### A. Summary Judgment

Rule 56 of the F.R.C.P. governs summary judgment. This rule provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a). Also, "a party asserting that a fact cannot be or is genuinely disputed must support the motion by citing to particular parts of materials in the record, including . . . affidavits . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." F.R.C.P. 56(c)(1)(A) and (B). "If a party fails to properly support an assertion of

fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment." F.R.C.P. 56(e)(3).

In a summary judgment motion, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings . . . [and] affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (U.S. 1986) (internal quotations and citations omitted). If the movant meets this initial burden, then the non-movant has the burden of going beyond the pleadings and designating specific facts that prove that a genuine issue of material fact exists. See Celotex, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (U.S. 1986); see Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). A non-movant, however, cannot meet the burden of proving that a genuine issue of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little, 37 F.3d 1069, 1075 (5th Cir. 1994).

Additionally, in deciding a summary judgment motion, courts "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is when both parties have submitted evidence of contradictory facts." Id. Courts "do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Id.

"A partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case." Streber v. Hunter, 221 F.3d 701, 737 (5th Cir.2000). Partial summary judgment serves the purpose of

rooting out, narrowing, and focusing the issues for trial. See Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1415 (5th Cir.1993).

## II. ANALYSIS

Greyhound argues that "under Louisiana law, when an employer accepts vicarious liability for the negligence [if any] of its employee, a plaintiff cannot maintain at trial a separate or independent cause of action against the employer for negligent supervision and training." Record Document 37-2 at 1. Dennis argues that "Louisiana cases demonstrate that even when an employer stipulates to vicarious liability, it does not magically shield that employer from being independently liable for its negligent behavior." Record Document 40-1 at 4.

From the cases the parties cite as well as the Court's own research, it appears that there is no binding precedent on this issue under Louisiana law. Thus, the Court will (1) outline the two arguments as made by the parties, (2) discuss relevant jurisprudence from the Court's own research, and then (3) decide the issue as applied to this case. In the absence of binding Louisiana authority on the issue, the Court seeks to make its best Erie guess under Louisiana's civilian methodology. See Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.), 495 F.3d 191, 206 (5th Cir. 2007) (explaining the proper method for federal courts to make an Erie guess under Louisiana law).

### A. Greyhound's Argument

As stated above, Greyhound argues that, as a matter of law, a plaintiff cannot simultaneously pursue both (1) a negligence cause of action against an employee for which the employer is vicariously liable and (2) a direct negligent supervision and/or negligent training cause of action against the employer when the employer stipulates that

the employee was in the course and scope of employment when he committed the alleged negligence. See Record Documents 37-2 at 1, 44 at 1-2.

Greyhound relies upon two cases to support this argument. See id. The first such case is Libersat v. J & K Trucking, Inc., 772 So. 2d 173 (La. App. 3 Cir. 10/11/2000). There, a truck driver (Mitchell) decided to make a U-turn at a break in the highway. See id. at 174. Another driver (Libersat) was driving in the opposite direction of the truck driver and struck the trailer attached to the truck driver's truck; Libersat died at the scene. See id. In the wrongful death and survival action that followed, Libersat's wife and daughters alleged negligence against Mitchell as well as independent causes of action against Mitchell's employer, Patterson Truck Line, Inc., for negligent hiring and training. See id. at 179. The trial court refused to instruct the jury regarding the plaintiffs' negligent hiring and training causes of action, allowing only the negligence cause of action against Mitchell to go to the jury. See id.

The plaintiffs challenged this refusal on appeal, but the appellate court affirmed. See id. Though technically the court reviewed the trial court's decision for an abuse of discretion, the court used language expressly agreeing with the trial court's decision, as if the court were reviewing the trial court's decision *de novo*. See id. (stating that "the Court finds that the trial court's instructions . . . are an accurate reflection of the law" and that the plaintiff's proposed instructions "were not appropriate in this case"). In support of this decision, the court stated as follows:

> Patterson, as Mr. Mitchell's employer, would be liable for his actions under the theory of *respondeat superior*. If Mr. Mitchell breached a duty to the Appellants, then Patterson is liable under the theory of *respondeat superior*. If Mitchell did not breach a duty to the Appellants then no degree of negligence on the part of Patterson in hiring Michell (sic) would make Patterson liable to the Appellants.

Id.

The second case Greyhound relies upon is Griffin v. Kmart Corp., 776 So. 2d 1226 (La. App. 5 Cir. 11/28/2000). There, the plaintiffs (Griffin and her adult daughter) went to the sporting goods counter at Kmart and asked for a price check on an item. See id. at 1229. Brown, the employee at the counter, suddenly pulled out an air pistol and shot both of them without provocation. See id. The plaintiffs sued Kmart, alleging both that Kmart was vicariously liable for the intentional tort of its employee Brown and that Kmart had negligently hired, trained, and supervised Brown. See id.

At trial, there was evidence that: (1) Kmart had hired Brown despite the reservations of its human resources manager; (2) Brown had been fired from his previous job at Wal-Mart close to Christmas for insubordination; (3) Brown only filled out the prospective employee questionnaire after he was already hired; (4) Kmart's human resources manager had not contacted any of Brown's personal references prior to hiring him; and (5) that Brown had received one or two days of training and no training in gun safety. See id. at 1229-30. The jury found that (1) Kmart was negligent in the hiring, training, and supervision of Brown and that this negligence proximately caused the injuries to the plaintiffs, and (2) that Brown committed an intentional tort, but that Kmart was not liable for his tort. See id. at 1230, 1232-33. On appeal, the court affirmed the jury's determination that Kmart was negligent in the hiring, training, or supervision of Brown; Kmart had put Brown at a sales counter with guns present, providing him with a

"unique opportunity" to cause injury to customers, while providing him with no training to avoid such injury. Id. at 1231, *quoting* Lou-Con Inc. v. Gulf Bldg. Servs., 287 So. 2d 192, 199 (La App. 4 Cir. 01/08/1974).

Thus, Greyhound uses Libersat as the source of its main argument, and offers Griffin in support to demonstrate a situation in which a negligent hiring, training, and/or supervision cause of action against an employer *can* be maintained simultaneously with an attempt to hold the employer liable for his employee's torts: when the employee's alleged tort is an intentional tort. See Record Document 44 at 2-3. Absent the situation in Griffin, Greyhound argues that negligent training and supervision causes of action against the employer are subsumed within a negligence cause of action against the employee when there is no doubt that the employee committed the negligence, if any, within the course and scope of employment. See id. at 3.

### B. Dennis' Argument

Conversely, Dennis contends that Greyhound's argument "is a complete misrepresentation of Louisiana jurisprudence and truly against public policy." Record Document 40-1 at 5. Dennis argues that theories of vicarious liability of employers for their employees' torts and direct liability of employers for their own torts are separate and independent causes of action such that maintaining one does not preclude simultaneously maintaining the other. See id. In response to Defendants' argument based on Libersat, Dennis points out that the court in that case technically affirmed the trial court's decision on an abuse of discretion review, arguing that this means the appellate court did not expressly approve of the trial court's rationale. See id.; see Libersat, 772 So.

2d at 179. Thus, according to Dennis, the Libersat decision does not state a generally applicable rule.

Dennis also argues that Greyhound's reliance on Griffin is misplaced. According to Dennis, "in Griffin, the court found the employer liable on theories of both negligent training and vicarious liability." Record Document 40-1 at 5. "Thus, Louisiana law supports theories of direct negligence and vicarious liability to hold employers accountable for their actions and the actions of their employees." Id. Finally, Dennis cites to several cases for the general proposition that Louisiana law recognizes negligent hiring, supervision, and training as "stand-alone claims of negligence separate and apart from the theory of vicarious liability" and that these claims are rooted in the general tort principles of Louisiana law as expressed in La. C.C. art. 2320. See id. at 6, *citing* Harris v. Pizza Hut of Louisiana, 455 So. 2d 1364 (La. 1984), Smith v. Orkin Exterminating, 540 So. 2d 363 (La. App. 1 Cir. 02/28/1989), and Roberts v. Benoit, 605 So. 2d 1032 (La. 1991), aff'd on rehearing, 605 So. 2d 1050 (La. 1992).

### C. Louisiana Jurisprudence Weighs in Favor of Greyhound's Argument.

#### i. Greyhound's Brief Presents a Stronger Argument under Louisiana Jurisprudence.

From the briefs alone and the cases cited therein, Greyhound's argument is more persuasive. It is true that the Louisiana Civil Code states broad tort principles in favor of allowing claimants to recover against anyone who is at fault for causing them injury, and that the Code holds masters responsible for their servants' torts. See La. C.C. arts. 2315, 2320. It is also true that the cases Dennis cites stand for the general proposition that it is possible to simultaneously maintain both (1) a tort cause of action against an employee

in an attempt to hold the employer vicariously liable for that tort and (2) an independent negligent hiring, training, and/or supervision cause of action against the employer.

However, these cases do not address the core of Greyhound's argument, and they are factually distinguishable from the instant case. <u>Harris</u> did not involve both a direct negligence cause of action like negligent hiring, training, and/or supervision against an employer and a separate negligence cause of action against an employee for which the plaintiff sought to hold the employer vicariously liable. 455 So. 2d at 1368-69. Rather, the opinion only discusses a negligence cause of action against the employee for which the employer was found liable.[1] <u>See id.</u> at 1369-72. <u>Smith</u> only confirms that a plaintiff can mount a successful independent negligent hiring and training cause of action against an employer when an employee commits an intentional tort. 540 So. 2d at 366, 368. The plaintiffs in <u>Smith</u> did not file suit based upon the employee's tort, and if they had, it would have been for an intentional tort rather than negligence because that case involved a sexual assault by the employee. <u>See id.</u> at 364, 365 n.3.

In <u>Roberts</u>, the Supreme Court of Louisiana officially recognized the tort of negligent hiring[2] as a cognizable tort under Louisiana law. 605 So. 2d at 1044. The Court also characterized direct negligence claims against employers and tort claims against employees for which the employer may be liable as "separate and independent." <u>Id.</u> at

---

[1] As the concurring opinion points out, the majority opinion's dicta hints at other possible negligence theories, but it appears that the plaintiffs only filed suit on the basis of the employee's negligence and not upon any sort of negligent hiring, training, and/or supervision causes of action. <u>See id.</u> at 1372-73 (Dennis, J., concurring).

[2] Though the Court only stated "we now expressly recognize the tort of negligent hiring as cognizable under" Louisiana law, the preceding and following discussion refers to negligent hiring, training, commissioning, and retaining employees, so the Court seems to have extended recognition to all such causes of action. <u>Roberts</u>, 605 So. 2d at 1044.

1037. Additionally, this case did involve allegations of both negligence on the part of an employee (a deputy sheriff) and negligent hiring and training by his employer (the sheriff), so it is more factually similar to the instant case than either Smith or Harris. See id. at 1036. However, in Roberts there was a fact question at trial as to whether the deputy acted in the course and scope of employment when he committed the negligence; the Court held on appeal that the deputy was not acting in the course and scope of employment as a matter of law under the evidence presented at trial. See id. at 1041. The "course and scope" question is not at issue in the instant case, as Greyhound has stipulated to the fact that the collision occurred while Collins was in the course and scope of employment. See Record Document 37-2 at 1. Thus, though these cases demonstrate that it is possible to maintain a direct negligence claim and a tort claim against an employee for which the employer may be held vicariously liable, they do not directly address Greyhound's argument.

Additionally, Dennis misreads Griffin. Dennis reads Griffin correctly in that the appellate court (1) affirmed the jury's finding that Kmart was negligent in the training of its employee and (2) found that the employee's tortious actions were taken in the scope of his employment[3], such that the employer was liable for all of the plaintiff's damages. See Griffin, 776 So. 2d at 1232-33. Dennis errs, however, by failing to recognize two distinct differences between Griffin and the instant case upon which Greyhound's argument

---

[3] The actual point of error on appeal was that the trial court had improperly posed a jury question that called for a legal conclusion by asking, "Is Kmart liable for the intentional tort of its former employee, Robbie Brown?" Griffin, 776 So. 2d at 1232. Finding that the question did improperly call for a legal conclusion, the court stated that the correct question was whether Brown was in the course and scope of employment, found that he was, and amended the judgment accordingly. See id. at 1232-33.

relies: (1) the employee's tort in Griffin was an intentional tort, not mere negligence, and (2) there was a fact question regarding whether the employee's tortious actions took place within the scope of employment, while there is no such question in the instant case. As explained more fully in Section II, C, ii, *infra*, these are two major distinctions under a close reading of Louisiana jurisprudence.

Finally, the general principle Dennis draws from the jurisprudence upon which he relies does not truly address Greyhound's argument. Dennis' broad conclusion based upon her misreading of Griffin and the other case law she cites that "Louisiana law supports theories of direct negligence and vicarious liability to hold employers accountable for their actions and the actions of their employees," though true, is overbroad. Record Document 40-1 at 5. This broad conclusion fails to recognize that while "direct negligence" is an independent negligence cause of action against the employer, "vicarious liability" is not a cause of action, but rather a method of holding one party liable for the conduct of another, of which *respondeat superior* is merely a species.

Greyhound does not argue that a plaintiff can never simultaneously maintain both (1) a direct negligence (i.e., negligent hiring, training, and or/supervision) cause of action against an employer and (2) a *tort* cause of action against an employee for which the plaintiff seeks to hold the employer vicariously liable. As stated above, Greyhound argues only that a plaintiff cannot simultaneously maintain both (1) a direct negligence cause of action against an employer and (2) a *negligence* cause of action against an employee for which the plaintiff seeks to hold the employer vicariously liable when the defendant stipulates that the employee acted in the course and scope of employment. Thus, Dennis' argument does not address the crux of Greyhound's basis for the instant Motion.

### ii.   Jurisprudence from the Court's Own Research Aligns with Greyhound's Argument.

In addition to reviewing the authorities the parties rely upon, the Court has independently searched for other Louisiana jurisprudence on the issue. The most relevant case the Court has found confirms and expands upon Greyhound's argument. In S. Pac. Transp. Co. v. Builders Transp. Inc., a Louisiana federal district court addressed a similar question and had to make its best Erie guess as to Louisiana law. 1993 U.S. Dist. LEXIS 7380 (E.D. La. 1993). There, a tractor-trailer and a train collided. See id. at *2-3. The railroad (Southern Pacific) filed suit against the owner of the tractor-trailer company (Builders) and its employee, and Builders filed a counterclaim alleging negligence by the train crew and negligent entrustment by Southern Pacific. See id. at *3, 27-31. During discovery, Builders found evidence of negligence by the same train crew on a prior occasion, and Southern Pacific filed a motion *in limine* as to the evidence of any prior collisions or negligent acts involving this crew. See id. at *27-31.

The court granted the motion *in limine*. See id. at 31. Analyzing the admissibility of such character evidence under Fed. R. Evid. 404, the court stated that generally evidence of other acts is inadmissible to prove that a person later acted in conformity with a propensity to engage in such acts. See id. at *28-29. However, evidence of prior acts is admissible to show negligent entrustment, because such a cause of action involves analyzing the information the entrustor knew or should have known about the competence of the entrustee to be entrusted with the vehicle or other item in question.[4] See id.

---

[4] Thus, negligent entrustment, though not identical to negligent hiring, training, and/or supervision causes of action, similarly focuses on the acts of the entrustor/employer in light of the information available about the entrustee/employee. See Roberts, 605 So. 2d at 1049-50 (Dennis, J., dissenting). The torts fall into the same category of "direct

The court held that Builders' negligent entrustment claim was subsumed in its negligence claim against the train crew for which Builders sought to hold Southern Pacific liable under *respondeat superior*. See id. at 29. Though the court found no Louisiana cases on the topic and the parties had not cited to any authorities, the court found that other jurisdictions "have determined that the two causes of action are mutually exclusive" in this situation. Id. at *30, *citing* Estate of Arrington v. Fields, 578 S.W.2d 173, 178-79 (Tex. Civ. App.—Tyler 1979, no writ) (a plaintiff may not maintain a negligence/*respondeat superior* claim versus an employee and a negligent hiring or entrustment claim versus his employer when course and scope of employment is conceded); see also Roberts, 605 So. 2d at 1047 (stating that common law jurisprudence can be considered in Louisiana courts under the civilian methodology so long as it is not inconsistent with the Civil Code's general principles of liability) (Dennis, J., dissenting). Thus, because the negligent entrustment claim was subsumed within the negligence claim versus the train crew, the character evidence of the train crew's prior acts was inadmissible. See id. at *30-31.

The above discussion demonstrates that though there is no binding Louisiana authority on the issue raised in the instant Motion, the available Louisiana jurisprudence weighs in favor of Greyhound's argument. In the Court's opinion, the best synthesis of these decisions into single rule statements is as follows:

> A plaintiff *may* simultaneously maintain independent causes of action in tort against both an employee and an employer for the same incident when:
> (1) the plaintiff alleges both
> (a) an *intentional* tort by the employee and

---

negligence" causes of action, and therefore cases like S. Pac. Transp. Co. are still useful in addressing the issues involved in the instant Motion.

      (b) negligent hiring, training, and/or supervision by the employer[5]; or

  (2) the plaintiff alleges both
      (a) negligence by the employee and
      (b) negligent hiring, training, and/or supervision by the employer; and
      (c) the employer does not stipulate that the employee acted in the course and scope of employment.[6]

Conversely, a plaintiff *may not* simultaneously maintain independent causes of action in tort against both an employee and an employer for the same incident when the plaintiff alleges both
    (a) negligence by the employee and
    (b) negligent hiring, training, and/or supervision by the employer; and
    (c) the employer stipulates that the employee acted in the course and scope of employment.[7]

### iii. The Elements of Cause-in-Fact and Legal Cause Support the Court's Conclusion that Greyhound's Argument is Correct, Particularly in the Instant Action.

The rule stated above is based, at least in part, on the elements of cause-in-fact and legal cause, also known as proximate cause. In Roberts, the Louisiana Supreme Court stated that "cause in fact is generally a 'but for' inquiry; if the plaintiff probably would have not sustained the injuries but for the defendant's substandard conduct, such conduct is a cause in fact." 605 So. 2d at 1042. In the Roberts opinion on rehearing, the Court stated that the key question in a legal cause determination is "whether the risk and harm encountered by the plaintiff fall within the scope of protection of the [duty]." Id. at 1054. This inquiry is "ultimately a question of policy." Id. at 1052.

---

[5] See Griffin, 776 So. 2d 1226 (La. App. 5 Cir. 11/28/2000).
[6] See Roberts, 605 So. 2d 1032 (La. 1991), aff'd on rehearing, 605 So. 2d 1050 (La. 1992).
[7] See Libersat, 772 So. 2d 173 (La. App. 3 Cir. 10/11/2000); see also S. Pac. Transp. Co., 1993 U.S. Dist. LEXIS 7380 (E.D. La. 1993).

Libersat most clearly demonstrates that these two causation elements support the rule the Court is applying on these facts. See 772 So. 2d at 179; see Section II, C, i, *supra*. Though the Libersat court did not use the term legal cause in explaining its decision, the court appears to state that if the driver (Mitchell) was not negligent, then even if the employer (Patterson) had been negligent in hiring and training Mitchell, there is no way that Patterson's negligence could have been either the but-for cause or the legal cause of the damages to Libersat such that Patterson would be liable for them. In other words, underlying the court's decision was the conclusion that even a complete lack of training or supervision could not have been either a but-for or legal cause of the plaintiff's injuries absent some negligence on the part of the employee on the day of the collision.

The instant case presents a situation that is very factually similar to Libersat, and it necessitates the same conclusion. As this case is at the summary judgment stage, the Court must answer the question: is there a genuine issue of material fact on each element of Dennis' negligent supervision and training causes of action? See F.R.C.P. 56. Stated differently, could a reasonable jury find by a preponderance of the evidence presented on summary judgment that each element of these causes of action is met?

The Court's answer to this question is that there is no genuine issue of material fact on the elements of cause-in-fact or legal cause. As in Libersat, the driver (Collins) was unquestionably acting in the course and scope of employment, and Greyhound has stipulated to this fact. See Record Document 37-2 at 1. If the trier of fact finds that he was negligent and that his negligence was a cause-in-fact and legal cause of Dennis' injuries, then Greyhound is liable for Collins' actions. If he was not negligent, then no amount of

negligence on the part of Greyhound in training and supervising him could have been the cause-in-fact or legal cause of the collision and Dennis' injuries. In other words, if the trier of fact does not find that Collins (exercising his training and under the supervision of Greyhound on the day of the collision) was negligent on the day of the collision, the trier of fact could not reasonably find that but-for Greyhound's failure to properly train and supervise Collins, the injuries to Dennis would not have occurred. Nor could the trier of fact reasonably find that Greyhound's failure to properly train and supervise Collins was a legal cause of Dennis' injuries if Collins was not negligent; Greyhound should not be held liable if its failure to train and supervise Collins did not result in an actual breach of duty by Collins on the day of the collision. Greyhound's Motion for Partial Summary Judgment must therefore be **GRANTED**.

## CONCLUSION

Greyhound's Motion for Partial Summary Judgment argued that a plaintiff cannot simultaneously pursue both (1) a negligence cause of action against an employee for which the employer is vicariously liable and (2) a direct negligent training and supervision cause of action against the employer when the employer stipulates that the employee was in the course and scope of employment when he committed the alleged negligence. See Record Documents 37-2 at 1, 44 at 1-2. From the authorities cited by the parties and the Court's own research, the Court finds that Greyhound's argument is correct. The Court also finds that there is no genuine issue of material fact on the elements of cause-in-fact and legal cause, a conclusion that is inherent in the jurisprudence that supports Greyhound's argument. Greyhound's Motion for Partial Summary Judgment is therefore

**GRANTED**, and Dennis' negligent training and supervision causes of action against Greyhound are hereby **DISMISSED WITH PREJUDICE**.

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this the 9th day of November, 2016.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE