UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| YOLANDA DENNIS | CIVIL ACTION NO. 15-2410 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| ERNEST COLLINS, II, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendants Ernest Collins, II ("Collins"), Greyhound Lines, Inc. ("Greyhound"), and National Union Fire Insurance Co. of Pittsburgh, PA's ("National Union") (collectively "Defendants") Daubert Motion regarding Plaintiff Yolanda Dennis' ("Dennis") retained expert witness, John C. Laughlin ("Laughlin"). See Record Document 45. Defendants filed the instant Daubert Motion on the grounds that Laughlin's opinions are inadmissible because (1) they are not based on sufficient facts or data and (2) they are not based on a reliable application of the principles and methods of accident reconstruction to the facts of the case. See Record Document 45-1 at 4. For the reasons which follow, Defendants' Motion is **DENIED**.

**FACTUAL BACKGROUND**

Greyhound is a Delaware corporation with its principal place of business in Texas that is engaged in the business of transporting passengers by bus throughout the United States. See Record Document 1-2 at ¶¶ 1-9. Collins is a citizen of Texas who works as a bus driver for Greyhound. See Record Document 37-3 at 5-17 (excerpts from Collins deposition). National Union is Greyhound's insurer. See Record Document 1-2 at ¶ 4.

On June 15, 2014, Collins was driving a Greyhound bus from Shreveport to Dallas, Texas. See Record Document 37-3 at 8. While traveling south on Market Street in Shreveport just before entering the on-ramp to take Interstate 20 ("I-20") westbound,

Collins collided with a GMC SUV in which Dennis was a passenger. See Record Document 1-2 at ¶ 5. Frederick Alford ("Alford") was driving the GMC SUV at the time of the collision. See Record Document 45-3 (excerpts from Alford deposition). Collins contends that as he was traveling south in the far right lane of Market Street at three to five miles per hour, a white Chevy truck cut him off as the bus was about to reach the I-20 entrance ramp, forcing him to hit the brakes and slightly veer to the right in his own lane. See Record Document 45-2 (excerpts from Collins deposition). He contends that at the same time, the GMC SUV was attempting to pass the bus on the right shoulder of the road, and that the back right corner of the bus collided with the GMC SUV when he was forced to veer right within his own lane.[1] See id. Dennis suffered injuries as a result of the collision. See Record Document 1-2 at ¶ 10-11.

Dennis filed the instant action in the First Judicial District Court of Caddo Parish, Louisiana, on June 15, 2015, alleging that (1) Collins' negligent driving and (2) Greyhound's negligent supervision, teaching, and training of Collins caused the collision and Dennis' injuries. See id. at 2, 6. After receiving a discovery response indicating that the amount in controversy was greater than $75,000, Defendants removed the case to this Court on September 23, 2015. See Record Document 1. Defendants filed a Motion for Partial Summary Judgment on July 1, 2016, arguing that Dennis' negligent supervision, teaching, and training claims against Greyhound are subsumed within her negligence claims against Collins under Louisiana law. See Record Document 37. The Court granted the Motion on November 9, 2016. See Dennis v. Collins, 2016 U.S. Dist.

---

[1] The Court has included Collins' description of events because Laughlin's role as an expert for Dennis is to "determine if the accident scenario proposed by Mr. Ernest Collins, II, in his deposition testimony is physically possible." Record Document 45-4 at 1.

LEXIS 155724 (W.D. La. 2016). On August 1, 2016, Defendants filed the instant Daubert Motion to Exclude Laughlin's opinions. See Record Document 45. Collins filed a Memorandum in Opposition on August 15, 2016. See Record Document 46.

## LAW AND ANALYSIS

**I.    LEGAL STANDARDS**

    **A. Admissibility of Expert Testimony**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 states that "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if all of the following elements are met:

> a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> b) the testimony is based on sufficient facts or data;
> c) the testimony is the product of reliable principles and methods; and
> d) the expert has reliably applied the principles and methods to the facts of the case.

This list of elements comes from Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 570 (1993), and its progeny. In Daubert, the Supreme Court stated that courts are required to serve as gatekeepers for expert testimony, ensuring that such testimony is both reliable and relevant before it is admitted into evidence. See 509 U.S. at 589. Thus, requiring the proponent of a particular expert to satisfy the four elements stated in Rule 702 is aimed at ensuring that any purported expert testimony is both reliable and relevant. See Fed. R. Civ. P. 702, Notes of Advisory Committee on 2000 Amendments.

Certain factors should be considered in determining whether a particular expert's opinions are reliable:

> (1) whether the expert's technique or theory can be or has been tested—that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community.

Id., citing Daubert, 509 U.S. at 593-95. This list of factors is non-exclusive, as the factors to be considered may vary depending upon the type of expert opinion at issue in a particular case. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149-50 (1999). Relevance of expert testimony is a question of "fit," i.e., whether the expert testimony in question is well-suited to the issues of a particular case such that it will help the jury in deciding these issues or in understanding evidence that is outside the average juror's ability to understand absent such help. Daubert, 509 U.S. at 591-92; see also In re Schooler, 725 F.3d 498, 514-15 (5th Cir. 2013) (affirming exclusion of expert testimony when the subject matter was within the common ability of jurors to understand without such testimony).

Though the trial court must fulfill its role as gatekeeper in ensuring that all admitted expert testimony is both reliable and relevant, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." United States v. 14.38 Acres of Land Situated in Leflore Co., Miss., 80 F.3d 1074, 1078 (5th Cir. 1996). "The rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Notes of Advisory Committee on 2000 Amendments. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the

traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 595.

The proponent of an expert's testimony bears the burden of proving that it meets the requirements of Rule 702. Moore v. Ashland Chem., Inc., 151 F. 3d 269, 276 (5th Cir. 1998). Whether these elements are met is a preliminary question for the district court to decide under Fed. R. Evid. 104(a). A district court has wide latitude in deciding whether to admit expert testimony, and decisions on whether to admit or exclude such testimony are reviewed for abuse of discretion on appeal. See Kumho Tire Co., 526 U.S. at 152-53.

## II. ANALYSIS

Defendants argue that Laughlin's testimony should be excluded because (1) it is not based on sufficient facts or data and (2) he has not reliably applied the principles and methods of accident reconstruction to the facts of the case, rendering Laughlin's opinions inadmissible under Rule 702. See Record Document 45-1 at 4. Dennis argues that Laughlin's opinion is based on sufficient facts and data and upon a reliable application of the laws of physics. See Record Document 46-1.

### A. Laughlin's Expert Report

Defendants included Laughlin's expert report and its attachments as an exhibit to their Daubert Motion. See Record Document 45-4. Laughlin is a licensed mechanical and biomedical engineer. See id. at 9. He holds a Bachelor of Science in Bioengineering and a Master of Engineering from Texas A&M University. See id. Defendants have not challenged Laughlin's qualifications. See Record Document 45-1.

Laughlin's report states that his "task presented" is to "determine if the accident scenario proposed by Mr. Ernest Collins, II, in his deposition testimony is physically

possible." Id. at 1. The report then states that Laughlin relied upon the following list of materials in coming to his opinions:

1. The State of Louisiana Uniform Motor Vehicle Traffic Crash Report 5901765;
2. Pertinent excerpts from Mr. Ernest Collins, II, deposition transcript;
3. Exhibits from Mr. Ernest Collins, II, deposition transcript;
4. Expert Autostats information regarding the GMC;
5. Vehicle Identification Number information regarding the GMC and the MCI bus;
6. On May 19, 2016, I obtained vehicle statistics regarding the MCI bus during a phone call to Motor Coach Industries;
7. Vehicle statistics regarding a 2010 Chevrolet 1500 Silverado;
8. Public Data regarding the MCI bus; and
9. Google Maps information regarding the accident scene.

Id. at 1-2. The vehicle statistics used included statistics like the physical measurements of each vehicle involved and the performance statistics for these vehicles. See id. at 17-48. Collins did not state that a particular model of Chevy truck cut off the bus as it was about to go up the I-20 entrance ramps, so Laughlin chose to use a 2010 Chevy Silverado 1500 in his model because it is a very common model. See id. at 3.

Next, the report states that Laughlin modeled the scenario described by Collins in his deposition using these materials and a computer program called PC-Crash, "an accident simulation program." Id. at 3. In performing this modeling, Laughlin used the following constraints and assumptions:

1. The GMC must navigate around the curb [which runs along the right side of Market Street but ends near the I-20 entrance ramp] to gain access to the right side of the bus on the shoulder;
2. The Chevrolet which cut off the MCI bus must be able to pass the barrier between the I-20 on-ramp and the southbound lanes of Market Street;
3. The MCI bus was traveling between 3 and 5 [miles per hour];
4. The Chevrolet must not cut off the MCI bus before the GMC could have enough room to drive to the right of the MCI bus; and
5. The right rear corner of the MCI bus contacted the GMC at the front left corner.

Id. Using this information and these constraints, and using PC-Crash to model the collision, Laughlin determined that "in every scenario which conformed to the laws of physics, the damage to the front left of the GMC and right rear of the MCI bus could not be produced." Id. at 4. Rather, in most scenarios produced by his model, "the GMC would pass the MCI bus on the right before contact could be made." Id. Thus, Laughlin concluded that "the accident scenario as proposed by Mr. Collins in his deposition testimony does not conform to the geometry of the accident location and the laws of physics." Id.

### B. Laughlin's Opinions Are Based upon a Reliable Application of the Principles of Accident Reconstruction.

Defendants take issue with Laughlin's collision modeling on the basis that it is founded on several assumptions that, according to Defendants, render the modeling unreliable. See Record Document 45-1 at 6-7. These allegedly faulty assumptions are as follows: (1) that Alford did not jump the curb adjacent to Market Street in attempting to pass the bus; (2) that the bus was positioned on the right side of the far right lane; and (3) that there is a barrier between the I-20 ramp and Market Street that the Chevy Silverado would have had to "successfully navigate around" before passing the bus. Id. at 6; see also Record Document 45-4 at 4 (Laughlin's assumption that the bus was on the right side of the far right lane).

As a threshold matter, neither the parties' briefs nor the expert report contain many details about the computer program PC-Crash. See Record Documents 45, 45-1, 45-4, 46, and 46-1. However, the Court notes that numerous experts in accident reconstruction use this program and similar programs, and several courts have admitted expert opinions based upon the use of this program. See, e.g., Eung Ho Moon v. United States, 2011

U.S. Dist. LEXIS 4765 at *17 (S.D.N.Y. 2011) (finding PC-Crash to be a reliable methodology and citing three other cases that agreed with this finding). The Court's review of Eung Ho Moon and the cases cited therein confirms that the use of PC-Crash is generally accepted in the accident reconstruction industry and by courts as a reliable methodology for reconstructing collisions. See Daubert, 509 U.S. at 593-95 (general acceptance within the scientific community is a factor to consider in determining whether an expert's methodology is reliable).

As for Defendants' objections to the assumptions Laughlin made in modeling the collision, the Court disagrees with the argument that these assumptions render Laughlin's methodology unreliable. First, Defendants take issue with the assumption that Alford did not jump the curb in attempting to pass the bus, arguing that Laughlin has "no information verifying whether this did or did not happen." Record Document 45-1 at 6. If this is true, then Laughlin had to deal with the question of whether Alford jumped the curb by assuming either that he did jump the curb or did not jump the curb. The assumption that a person attempting to pass a bus would refrain from jumping a curb is a reasonable assumption, as doing so would obviously entail a certain risk of damage to the vehicle and might slow down the attempt to pass the bus. Thus, though this may be a valid point regarding a potential deficiency in the model on which Laughlin may be cross-examined, the Court finds that this assumption does not render his methodology unreliable.

Second, Defendants take issue with Laughlin's assumption that the bus was traveling on the right side of the right lane when the Chevy truck attempted to pass it on the left side. See id. Defendants argue that Laughlin based this assumption on the contention that there is a barrier that the truck must "successfully navigate around" before

traveling up the ramp, and that because there is no such barrier, Laughlin's assumption about the position of the bus in the far right lane is erroneous. See id. The Court disagrees. The only barrier present in the photographs of the scene is the V-shaped barrier located at the split between Market Street and the beginning of the I-20 entrance ramp. See Record Document 45-4 at 16. It is true that reading this sentence of the expert report in isolation makes it seem as if there is a barrier that the Chevy truck would have had to "successfully navigate around" prior to passing the bus, i.e., some other barrier prior to reaching the fork in the road between Market Street and the I-20 entrance ramp. Record Document 45-1 at 3. However, from the broader context of the report and the photographs of the scene, it seems clear that the report was referring to this V-shaped barrier. See id. The Court will not deem Laughlin's methodology unreliable because of poor phrasing.

Further, the Court finds that the assumption that the bus was driving in the far right lane is reasonable based upon Collins' deposition. Again, though Defendants may cross-examine Laughlin on the basis that this assumed fact may not be correct, the Court finds that this assumption does not render Laughlin's methodology unreliable.

### C. Laughlin's Opinions Are Based upon a Sufficient Factual Basis.

Under Rule 702, whether an expert's opinions are based upon sufficient facts or data is a "quantitative rather than qualitative analysis." Fed. R. Evid. 702, Notes of Advisory Committee on 2000 Amendments. Defendants take issue with the amount of facts and data that Laughlin used in modeling the collision, arguing that the following facts or pieces of data were necessary for Laughlin to reliably apply his methodology and reach his conclusions: (1) physical measurements of the lanes, shoulders, and barriers at the

scene of the collision rather than standard 12-foot lanes and other measurements scaled from Google Maps images; (2) measurements of the height and width of the curb on the right side of Market Street; (3) the distance from the curb to the guardrail; (4) the slope of the road; and (5) photographs of the damaged vehicles. See Record Document 45-1.

Defendants' argument on this point is stronger than their argument on Laughlin's methodology itself. Though courts have generally admitted expert testimony based on the use of PC-Crash, at least one other district court in the Fifth Circuit has excluded such testimony on the basis that insufficient facts or data were used in modeling collisions using this program and similar programs. See Fairley v. Clarke, 2004 U.S. Dist. LEXIS 7057 at *13-17 (E.D. La. 2004).

However, the Court finds that the facts and data used in the instant case are sufficient, even though some of Defendants' criticisms of the facts and data used in the model may be valid topics for cross-examination of Laughlin. Curb measurements and the distance between the curb and the guardrail were unnecessary for Laughlin's model, as he assumed that the GMC SUV did not jump the curb in attempting to pass the bus. See Record Document 45-4; see Section II, B, *supra*. Physical measurements may be superior to the scaling method from Google Maps images Laughlin used, but the Court cannot say that use of such images, one of which appears to be a satellite image, for distance measurements constitutes an insufficient factual basis for modeling a car collision. See Record Document 45-4 (Image 1, an overhead view of the collision scene). Photographs of the damaged vehicles may have been more helpful in pinpointing the exact portion of the bus and GMC SUV that collided. However, Laughlin's assumption that the front left corner of the GMC SUV and the back right corner of the bus collided is

supported by both the police report diagram and Collins' deposition testimony, so these facts constitute a sufficient factual basis for that assumption. See Record Documents 45-2 and 46-2 (the police report).

Finally, Defendants' strongest argument is that Laughlin failed to account for any slope in the road in modeling the collision. See Record Document 45-1 at 7. The Court has thoroughly reviewed Laughlin's expert report, including the dozens of pages of input and output printouts from Laughlin's modeling on PC-Crash, and it appears that he did not account for slope in the road. See Record Document 45-4. Defendants correctly point out that from the photographs of the scene of the collision, there seems to be a slight incline in the road as it approaches the I-20 entrance ramp, with the incline growing steeper closer to the ramp. See Record Document 45-4 at 16 (Image 3). As Laughlin's model involves analysis of the performance capabilities of three different vehicles and whether it is "physically possible" for the scenario Collins describes to have occurred, an incline in the road would seemingly be a variable to take into account. Id. at 1.

However, the Court finds that this deficiency is more related to the weight of Laughlin's opinions than their admissibility. The incline in the road at the scene of the collision appears to be very slight, and Laughlin's calculations are otherwise both detailed and based on extensive facts. Mindful of both the Court's role as gatekeeper and the fact that "the rejection of expert testimony is the exception rather than the rule," the Court finds that the failure to include the slope of the road in Laughlin's model does not mean the model is based on insufficient facts or data, at least under the facts of the instant action. Fed. R. Evid. 702, Notes of Advisory Committee on 2000 Amendments.

## CONCLUSION

Defendants' Daubert Motion (Record Document 45) seeking to exclude the testimony of Dennis' expert witness Laughlin is **DENIED**. Under these facts, the Court finds that Defendants' criticisms of Laughlin's methodology and the facts and data upon which he bases his opinions go to weight, not admissibility. The Court finds that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are sufficient means for Defendants to address their critiques of Laughlin's opinions, and that his opinions are admissible in the instant action. Daubert, 509 U.S. at 595.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this the 15th day of March, 2017.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE